# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL,<br><br>　　　　Petitioner,<br><br>　v.<br><br>CHRISTOPHER CHESTNUT, et al.,[1]<br><br>　　　　Respondents. | Case No. 1:25-cv-01469-SAB-HC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DENYING MOTION FOR PRELIMINARY INJUNCTION AS MOOT, DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER ON ORDER OF SUPERVISION, DIRECTING RESPONDENTS TO FILE STATUS REPORT, AND VACATING DECEMBER 10, 2025 HEARING<br><br>(ECF Nos. 1, 2, 12) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 10, 17, 18.)

## I.

## BACKGROUND

Petitioner is a native and citizen of India. (ECF No. 1 at 21; ECF No. 1-2 at 14, 33; ECF No. 15 at 2.[2]) Petitioner fled India in September 2022 and entered the United States on June 10, 2024. (ECF No. 1 at 22; ECF No. 1-2 at 14, 34; ECF No. 15 at 2.) Promptly upon entry into the

---

[1] Respondents move to strike and to dismiss all named Respondents with the exception of Petitioner's immediate custodian, Christopher Chestnut, the facility administrator at the California City ICE Processing Center. (ECF No. 14 at 1 n.1.) The California City ICE Processing Center is a privately owned and operated facility. Given, as set forth below, that the Court is enjoining Respondents from removing Petitioner to a third country unless certain procedures are followed, it appears that at least some of the named government Respondents should not be dismissed. Accordingly, the Court denies Respondents' motion to strike and dismiss all improperly named officials.

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

1

1 United States, Respondents brought Petitioner into custody where he has lived in detention since.
2 (ECF No. 1 at 21; ECF No. 1-1 at 3; ECF No. 15 at 2.) On or about June 26, 2024, Petitioner was
3 transferred from Otay Mesa Detention Center in San Diego, California, to the Golden State
4 Annex in McFarland, California. (ECF No. 15 at 2.) An asylum officer found Petitioner
5 demonstrated a reasonable fear of persecution or torture, and on July 29, 2024, the Department of
6 Homeland security ("DHS") served Petitioner with a Notice to Appear ("NTA"), charging him as
7 removable under two provisions of section 212(a) of the Immigration and Nationality Act
8 ("INA") for being present in the United States without being admitted or paroled and without
9 certain documents. (ECF No. 1 at 21; ECF No. 1-2 at 8–10.)

10 On March 17, 2025, an immigration judge ("IJ") found Petitioner inadmissible, ordered
11 him removed to India, but granted Petitioner withholding of removal to India under section
12 241(b)(3) of the INA because Petitioner would likely be persecuted if removed there on the basis
13 of a protected status related to political expression and his Sikh identity. (ECF No. 1 at 23; ECF
14 No. 1-2 36–39.) On April 17, 2025, Petitioner's removal order became final when the appeal
15 period expired. (ECF No. 1 at 23; ECF No. 14 at 2; ECF No. 15 at 2.) On or about September 4,
16 2025, Petitioner was transferred to the California City ICE Processing Center. (ECF No. 15 at 2.)

17 On October 31, 2025, Petitioner filed the instant petition for writ of habeas corpus and a
18 motion for preliminary injunction, arguing that: (1) his continued detention violates the INA, 8
19 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678
20 (2001); (2) Respondents' third country removal procedures generally and as applied to Petitioner
21 violate the INA, 8 U.S.C. § 1231(a)(6), and its statutory and regulatory protections for asserting a
22 fear-based claim in connection with removal; and (3) Petitioner's continued detention and
23 Respondents' third country removal procedures violate the Due Process Clause of the Fifth
24 Amendment. (ECF No. 1 at 25–36; ECF No. 2.)

25 On November 5, 2025, the assigned district judge referred the motion for preliminary
26 injunction to the undersigned. (ECF No. 11.) That same day, the Court issued a briefing
27 schedule. (ECF No. 13.) Therein, the Court indicated that it would advance the merits
28 determination and consolidate it with the resolution of the preliminary injunction pursuant to

1 Federal Rule of Civil Procedure 65(a)(2), which provides that "[b]efore or after beginning the
2 hearing on a motion for a preliminary injunction, the court may advance the trial on the merits
3 and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). On November 11, 2025,
4 Respondents filed an opposition to the motion for preliminary injunction and response to the
5 petition. (ECF No. 14.) On December 3, 2025, Petitioner filed a reply. (ECF No. 16.)

## II.

## DISCUSSION

### A. Zadvydas

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
>> "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

1         In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose
2    removal could not be effectuated due to lack of a repatriation treaty or because their designated
3    countries refused to accept them, challenged their prolonged detention under § 1231(a)(6).
4    Applying the canon of constitutional avoidance because a "statute permitting indefinite detention
5    of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit
6    limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period
7    detention to a period reasonably necessary to bring about that alien's removal from the United
8    States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period,
9    once the alien provides good reason to believe that there is no significant likelihood of removal
10   in the reasonably foreseeable future, the Government must respond with evidence sufficient to
11   rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior
12   postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely
13   would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien
14   not removed must be released after six months. To the contrary, an alien may be held in
15   confinement until it has been determined that there is no significant likelihood of removal in the
16   reasonably foreseeable future." Id.

17         Here, Petitioner is detained pursuant to § 1231(a)(6). (ECF No. 14 at 6; ECF No. 15 at 3.)
18   Respondents concede that Petitioner's detention has exceeded Zadvydas's presumptively
19   reasonable six-month period. (ECF No. 14 at 5.) The petition alleges:

20       Since his Withholding of Removal Order became final, neither Vishal nor his
         immigration counsel have received any written or otherwise formal notice or
21       evidence of ICE's plans or efforts to remove him to a third country. Vishal has
         diligently followed up with ICE at nearly every available opportunity since
22       winning withholding of removal relief about their plans to either release him or
         remove him to a third country. Almost every time, ICE simply said they were
23       working on finding a third country without identifying any country.

24   (ECF No. 1 at 23 (internal citations omitted).) On one occasion in July 2025, an Immigration and
25   Customs Enforcement ("ICE") officer, who Petitioner believes may have mistaken him for
26   another noncitizen, told Petitioner that DHS was waiting on Bangladesh to provide travel
27   documents for Petitioner. (ECF No. 1 at 23; ECF No. 1-1 at 4.) When Petitioner informed the
28   officer that he was not from Bangladesh, the officer became confused and said ICE's online

1  system listed Bangladesh. In subsequent encounters, officers simply stated that they were
2  working on finding a third country without identifying any country. (ECF No. 1 at 23; ECF No.
3  1-1 at 4.) Petitioner argues that "Respondents have failed to provide notice of any progress that
4  has been made over the past seven months to effectuate Vishal's removal following his award of
5  withholding of removal relief. Without any evidence of progress, Vishal's continued detention
6  has become indefinite, with no reasonably foreseeable plan for his removal." (ECF No. 2 at 7.)

7  Respondents contend that "Petitioner has not shown he is stuck in 'removable-but-
8  unremovable limbo'" because "Petitioner has not alleged that no third country will ever accept
9  him. Nor has he cited to any United States law that bars his removal." (ECF No. 14 at 6 (quoting
10 Prieto-Romero, 534 F.3d. at 1063).) However, Zadvydas rejected the argument that the
11 noncitizen must "show that deportation will prove 'impossible'" or "show the absence of *any*
12 prospect of removal—no matter how unlikely or unforeseeable." Zadvydas, 533 U.S. at 702.
13 Here, Petitioner has been detained pursuant to § 1231(a) for seven months. The petition alleges
14 that in that time, ICE has failed to identify a third country willing to accept Petitioner. Petitioner
15 declares that he has never been asked to apply for any travel documents and that ICE has paper
16 copies of his passport and identification card. (ECF No. 16-1 at 2.) Accordingly, the Court finds
17 that Petitioner "provides good reason to believe that there is no significant likelihood of removal
18 in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

19 Now, "the Government must respond with evidence sufficient to rebut [Petitioner's]
20 showing." Zadvydas, 533 U.S. at 701. The only evidence submitted by Respondents is the
21 declaration of a deportation officer that states:

> On or about May 9, 2025, ERO began the process of trying to obtain confirmation from an alternative third country that would accept Petitioner when he is removed. Those efforts are ongoing. Once ICE has identified a country for removal, Petitioner will receive notice of the country to which ICE intends to remove Petitioner and an opportunity to seek any fear-based relief to which Petitioner believes he is entitled.

26 (ECF No. 15 at 2.) Respondents do not provide any details whatsoever regarding what actions
27 have been and are being taken in pursuing Petitioner's removal to a third country. "Courts in this
28 circuit have regularly refused to find Respondents' burden met where Respondents have offered

little more than generalizations regarding the likelihood that removal will occur." Nguyen v. Scott, No. 2:25-CV-01398, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025) (citing Singh v. Gonzales, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); Chun Yat Ma v. Asher, No. C11–1797 MJP, 2012 WL 1432229, at *4–5 (W.D. Wash. Apr. 25, 2012); Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025)). Thus, the Court finds that Respondents have not responded with evidence sufficient to rebut Petitioner's showing.

"[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Zadvydas, 533 U.S. at 699–700. See Huang v. Albarran, No. 1:25-cv-01308 JLT EPG, 2025 WL 2986885, at *4 (E.D. Cal. Oct. 23, 2025) ("When, as here, a noncitizen does not leave or is not removed within the 90-day removal period, the individual, 'pending removal, shall be subject to supervision.' 8 U.S.C. § 1231(a)(3). 'As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention.' *Alva*, 2025 WL 2419262, at *3. Noncitizens subject to a removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025). Once released, those same regulations also govern revocation of release.").

To the extent Respondents contend that despite Petitioner providing good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future and despite Respondents having failed to respond with evidence sufficient to rebut Petitioner's showing, release is nonetheless inappropriate because Petitioner has been involved in two altercations while in custody, (ECF No. 14 at 6), the Court finds Respondents' argument unpersuasive in light of Thai v. Ashcroft, 366 F.3d 790 (9th Cir. 2004).

In Thai, the petitioner challenged his prolonged detention under Zadvydas. The government argued "that *Zadvydas* 'contains an exception to the presumptive six-month rule for particularly dangerous individuals where there are circumstances, such as mental illness, that help to create the danger'" and "that the regulations in 8 C.F.R. §§ 241.14, *et seq.*—which

6

provide for the detention of aliens deemed 'specially dangerous'—were specifically promulgated in light of this alleged exception and, thus, that Thai's continued and potentially indefinite detention is authorized." Thai, 366 F.3d at 794. The Ninth Circuit rejected the government's argument, stating:

> The Government's current attempts to justify Thai's detention are indistinguishable from its unsuccessful arguments in *Zadvydas*. The Government claims that Thai must be detained because he poses a threat to the community due to his propensity for violence. Just as that argument failed before the Supreme Court regarding Ma, it must fail now. Like Ma, Thai is an ordinary violent criminal. If a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai.

Thai, 366 F.3d at 797. Ma "was involved in a gang-related shooting, convicted of manslaughter, and sentenced to 38 months' imprisonment." Zadvydas, 533 U.S. at 685. "Thai ha[d] established a record as a violent criminal, accumulating convictions for assault, harassment, and third-degree rape." Thai, 366 F.3d at 792. The Ninth Circuit further held that "[b]ecause the Government may not detain Thai under § 1231(a)(6), the § 241.14(f) regulations, which were enacted under the authority of that statute, cannot authorize Thai's continued and potentially indefinite detention." Id. at 799.

Here, Petitioner's two altercations while in immigration custody are nowhere near as serious as Ma's manslaughter conviction or Thai's convictions for assault, harassment, and third-degree rape. If a need to protect the community did not justify the detention of either Ma or Thai under 8 U.S.C. § 1231(a)(6), it similarly does not justify the detention of Petitioner. The government's concern about the safety of the community can be addressed through the conditions of supervision imposed on Petitioner upon his release. Accordingly, the Court finds that Petitioner's continued detention is unreasonable and no longer authorized by 8 U.S.C. § 1231(a)(6) and that Petitioner should be released on appropriate conditions.[3] See 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period).

---

[3] In light of the conclusion that Petitioner's continued detention is not authorized by statute, **t**he Court declines to address whether Petitioner's continued detention violates the Due Process Clause.

**B. Third Country Removal**

Petitioner also asserts that Respondents' third country removal procedures, as set forth in the March 30, 2025, and July 9, 2025 policy memorandums, violate the INA and the Due Process Clause of the Fifth Amendment. (ECF No. 1 at 32, 36.) Respondents do not address this issue at all in their response. However, the declaration of the deportation officer states: "Once ICE has identified a country for removal, Petitioner will receive notice of the country to which ICE intends to remove Petitioner and an opportunity to seek any fear-based relief to which Petitioner believes he is entitled." (ECF No. 15 at 2.)

"It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "a basic tenet of constitutional due process" is "that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence," Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). The Ninth Circuit has held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian, 180 F.3d at 1041. Accord Ibarra-Perez v. United States, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)).

> In March 2025, the District of Massachusetts entered a temporary restraining order enjoining ICE from "[r]emoving any individual subject to a final order of removal from the United States to a third country, i.e., a country other than the country designated for removal in immigration proceedings" unless certain conditions were met. D.V.D., 2025 WL 942948, at *1.
>
> On March 30, 2025, the Department of Homeland Security ("DHS") issued updated guidance on third country removals. Dkt. No. 4-1. The guidance states that noncitizens may be removed to a third country without notice or other "further procedures" if the country has given diplomatic assurances that individuals "removed from the United States will not be persecuted or tortured" and the Department of State deems those assurances credible. Id. at 2–3. If the country has not provided assurances (or the assurances are deemed incredible),

> DHS will notify the noncitizen of its intent to remove them to the third country but "will not affirmatively ask whether the [noncitizen] is afraid of being removed" there. *Id.* Only if the noncitizen affirmatively expresses a fear of removal will the officer refer them to United States Citizenship and Immigration Services ("USCIS") for a screening interview to assess eligibility for withholding of removal or CAT protection. *Id.* at 3. If USCIS determines the noncitizen likely qualifies for protection, it will refer the matter to the immigration court or to ICE, depending on the circumstance. *Id.* And if the referral is to ICE, rather than to the immigration court, ICE may either move to reopen the noncitizen's removal proceedings "for the sole purpose of determining eligibility for protection" or it may designate a different country of removal. *Id.*
>
> Weeks after this guidance was issued, the district court in *D.V.D.* certified a plaintiff class and issued a class-wide preliminary injunction establishing procedures DHS and ICE had to follow before removing noncitizens to a third country. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 394 (D. Mass. 2025); *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (memorandum offering more guidance on compliance with the preliminary injunction). The United States Supreme Court stayed the preliminary injunction without explanation pending appeal in the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).
>
> On July 9, 2025, following the Supreme Court's stay, ICE issued guidance to its agents reinstating the March 30 DHS memorandum. Dkt. No. 4-2. The policy set out in the July 9 guidance largely mirrors the March 30 memorandum, but adds that, in cases where no diplomatic assurances exist, ICE will serve a "Notice of Removal" identifying the country of removal, translate the notice for the noncitizen, and "generally wait at least 24 hours following service … before effectuating removal." *Id.* at 2. "In exigent circumstances[,]" however, ICE may, with proper approval, execute removal in as little as six hours after service. *Id.*

Kumar v. Wamsley, No. C25-2055-KKE, 2025 WL 3204724, at *2–3 (W.D. Wash. Nov. 17, 2025).

Multiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent. See, e.g., Kumar, 2025 WL 3204724, at *6 (noting "overwhelming authority against" the policy); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) ("ICE's policy is contrary to Ninth Circuit precedent. . . . Other courts in this circuit have recognized that this policy is unconstitutional, and this Court agrees with those well-reasoned decisions."); Nguyen, 2025 WL 2419288, at *19 ("This policy contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy."). In light of Andriasian, the Court finds that Respondents' third country removal policy, as set forth in the March 30, 2025, and July 9, 2025 policy memorandums, violates due process and is contrary to Ninth

Circuit precedent. Accordingly, Petitioner cannot be removed to a third country without meaningful notice and an opportunity to assert a fear-based claim.

## III.

## ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED;
2. Petitioner's motion for preliminary injunction (ECF Nos. 2, 12) is DENIED as moot;
3. Respondents are DIRECTED to IMMEDIATELY RELEASE Petitioner subject to an order of supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5;
4. Respondents are PERMANENTLY ENJOINED AND RESTRAINED from removing Petitioner to a third country unless Respondents adhere to the following procedures:
    a. provide Petitioner and his counsel a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;
    b. if Petitioner demonstrates reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings;
    c. if Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days for Petitioner to seek reopening of his immigration proceedings.
5. Within five (5) days of the date of service of this order, Respondents shall file a status report with the Court confirming that Petitioner has been released.
6. The December 10, 2025 hearing currently set for this matter is VACATED.

IT IS SO ORDERED.

Dated:    **December 5, 2025**

STANLEY A. BOONE
United States Magistrate Judge

10